**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-24067-BLOOM**

DAMIEN ESCOBAR GAMES,

Petitioner,

v.

WARDEN, North Krome Detention Center;
GARRETT J. RIPA, Miami Field Office
Director, Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary of the U.S
Department of Homeland Security; and TODD
BLANCHE, Acting Attorney General of the U.S.,
in their official capacities,

Respondents.
_______________________________________________/

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** is before the Court upon Petitioner Damien Escobar Games's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, alleging that he has been unlawfully detained in Immigration and Customs Enforcement ("ICE") custody. ECF No. [1]. The Court ordered a response from Respondents. ECF No. [5]. Respondents timely filed a Response, ECF No. [11], to which Petitioner filed a Reply, ECF No. [12]. The Court has considered the Petition, the Response, the Reply, the record in this case, applicable law, and is otherwise fully advised. For the reasons set forth below, the Petition is granted.

## I. FACTUAL BACKGROUND

Petitioner is a citizen and national of Cuba who has been present in the United States since 1995. ECF No.[1] ¶ 1. Petitioner was transferred to the United States from Guantanamo Bay, where he requested asylum to the United States and was paroled. *Id.* ¶ 2.

On January 19, 200, Petitioner was convicted in Florida for three offenses: (1) Grand Theft

Third Degree/Vehicle and (2) Grand Theft Third Degree, and (3) Burglary (Occupied). ECF Nos. [11-1], [11-8]. The Court sentenced Petitioner to five years imprisonment. *Id*. That same day, Petitioner was convicted on two additional counts: Grand Theft Second Degree and Burglary (Occupied). ECF No. [11-1]. The Court sentenced Petitioner to five years imprisonment. *Id*.

On February 9, 2000, Petitioner was issued with a Notice to Appear ("NTA"), charging him with being removable on two statutory grounds. *Id*. On March 10, 2000, Petitioner was convicted in Florida on two counts: Burglary Dwelling and Grand Theft. ECF No. [11-9].

On October 25, 2000, Petitioner was ordered to be removed. ECF No. [1] ¶ 3. In 2002, Petitioner was detained by ICE for 90 days and was then issued an Order of Supervision ("OSUP") because the agency had not effected his removal during the period prescribed by law. *Id.* ¶ 4. Since 2003, Petitioner has fulfilled his yearly obligation to check in with ICE every single year. *Id.* ¶ 5.

On April 25, 2010, Petitioner was arrested by the Hialeah Police Department for the offense of Battery – Domestic Violence. ECF No. [11-6]. On May 14, 2010, the charge was *nolle prosequi* by the prosecutor. *Id*.

On December 10, 2025, Petitioner was ordered to appear at ICE's office to fulfill his yearly check-in obligation. ECF No. [1] ¶ 6. While there, he was detained by ICE officers and placed into a local immigration detention facility. *Id.* ICE Enforcement and Removal Operations served Petitioner with a Notice of Revocation of Release pursuant to 8 C.F.R. §241.4(1). ECF No. [11-7]. That day, Petitioner had an informal interview where he was notified that his OSUP was being revoked to enforce his removal from the United States. ECF No. [11-6]. Petitioner was given an opportunity to ask questions regarding the OSUP revocation but stated he did not have any questions at that time. *Id*.

As of December 16, 2025, the government of Cuba denied accepting the removal of

Petitioner to Cuba. *Id*. On January 14, 2026, Petitioner was served with a Notice of Removal advising him that ICE intends to remove him to Mexico. ECF No. [11-3]. On March 6, 2026, Petitioner requested parole. ECF No. [11-6]. ICE denied the parole request on the basis that Petitioner's convictions render him a danger to the community. *Id*. On April 30, Petitioner was again served with a Notice of Removal advising him that ICE intends to remove him to Mexico, which he refused to sign. ECF No. [11-4].

On May 12, 2026, Petitioner's first petition for habeas corpus was denied in the Middle District of Florida on the basis that he had not been held for six months or longer. ECF No. [1] ¶ 7. As of June 10, 2026, Petitioner was in ICE custody for six months. *Id.* ¶ 8. Petitioner is being held at the Krome North Processing Center in Miami-Dade County, FL. *Id.* ¶ 9.

Petitioner asserts four claims: Violation of Due Process (Count I), Procedural Due Process Challenge (Count II), and Administrative Procedure Act (Violation of 5 U.S.C. § 555(b)) (Count III), Writ of Mandamus (in the alternative – relief under 28 U.S.C. § 1361) (Count IV). *See generally id*.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

In Count I, Petitioner argues that his detention violates due process, as he is being detained past the presumptively reasonable period and his removal in the reasonably foreseeable future is

not likely. ECF No. [1] ¶¶ 29–31. Respondents contend that Petitioner has not made the showing required of him to justify release and has not carried his burden of showing that removal is not reasonably foreseeable. ECF No. [11] at 5–6. Moreover, Respondents contend that they have shown removal is likely to occur. *Id.* at 6. Petitioner replies that Cuba's refusal to accept Petitioner establishes that there is no significant likelihood of removal in the reasonably foreseeable future; the two Notices of Removal to Mexico do not change that analysis. ECF No. [12] at 4–5.

"After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (quoting 8 U.S.C. § 1231(a)(1)(A)). Once that "removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Id.* at 578–79 (quoting 8 U.S.C. § 1231(a)(6)).

But "Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." *Id.* at 579. And "indefinite detention" raises "serious constitutional concerns." *Zadvydas*, 533 U.S. at 682. As a result, the Supreme Court has "construe[d] the statute to contain an implicit 'reasonable time' limitation" of six months, "the application of which is subject to federal-court review." *Id*. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. But "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must

respond with evidence sufficient to rebut that showing." *Id*.

So, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). If the petitioner provides such evidence, the burden shifts to the Government to provide evidence sufficient to rebut that showing. *Id.* (quoting *Zadvydas*, 533 U.S. at 701).

As of the filing of the Petition, Petitioner crossed the 6-month mark in his detention, ECF No. [1] ¶ 8, placing his case beyond the presumptively reasonable period contemplated by *Zadvydas*. Thus, the Court turns to the question of whether Petitioner has shown that removal is unlikely within the reasonably foreseeable future.

Petitioner's removal order is plain in stating that Petitioner is to be removed to Cuba, specifically crossing out countries raised "in the alternative." ECF No. [11-5]. Respondents plainly admit that Cuba declined to accept Petitioner. ECF No. [11-6] ¶ 15. The Court finds that this showing is sufficient to satisfy Petitioner's initial burden. Indeed, when a country "refuses to allow" the return of its nationals, "there is no significant likelihood of removal in the reasonably foreseeable future." *Rosales-Garcia v. Holland*, 322 F.3d 386, 390, 415 (6th Cir. 2003); *see also Benitez v. Wallis*, 402 F.3d 1133, 1135 (11th Cir. 2005).

Thus, the burden shifts to Respondents to rebut Petitioner's showing. Respondents lean heavily on the fact that they served Petitioner with two Notices of Removal to Mexico, ECF Nos. [11-3] and [11-4], and on their continued intent to remove Petitioner, ECF No. [11-6]. Neither of these facts is compelling, as neither is tantamount to a concrete step to remove Petitioner to Mexico. *See Fuentes v. Ripa*, No. 3:26-CV-134-MMH-PDB, 2026 WL 717982, at *3 (M.D. Fla.

Mar. 16, 2026) ("Simply providing [a petitioner] with a notice of removal to a third country does not show a 'significant likelihood' that he will be removed to that country in the reasonably foreseeable future."). As Petitioner points out, "[t]he Government has offered no evidence, not a diplomatic note, not a treaty provision, not a written commitment from Mexican authorities, that Mexico will receive Petitioner." ECF No. [12] at 5. There is no indication that the Government has requested travel documents or in any way contacted Mexico regarding Petitioner. *See Betancourt v. Noem*, No. 2:26-CV-00503-SPC-DNF, 2026 WL 672975, at *2 (M.D. Fla. Mar. 10, 2026) (finding removal not likely where the Government did not "claim ICE has taken any steps towards third-country removal or that any third country is reasonably likely to accept [the petitioner.").

In assessing the likelihood of removal, courts may consider whether the Government presents evidence of its "contact" with a foreign country, whether the country "is accepting individuals from the United States," whether "flights are regularly being scheduled" to the country, or whether the country "routinely issues travel documents." *Lambert v. Garland*, 2023 WL 2016841, at *4 (S.D. Fla. Feb. 15, 2023) (quotation marks omitted). Respondents here offer none of these assurances. In light of this, the Court finds that Petitioner's removal is not likely in the reasonably foreseeable future, so his detention violates *Zadvydas*. The Court will therefore grant the Petition on the basis of Count I.[1]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUGED** as follows:

1. The Petition, **ECF No. [1]**, is **GRANTED.**

---

[1] Because the Court orders Petitioner's release based on Count I, the Court does not reach Petitioner's remaining arguments.

2. Respondents are directed to immediately release Petitioner on conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).
3. The Clerk of Court shall **CLOSE** this case.
4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 18, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

Noticing INS Attorney
Email: usafls-immigration@usdoj.gov

Noting 2241/Bivens US Attorney
Email: usafls-2255@usdoj.gov